UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. GERALD R. FINKEL, as Chairman of the Joint Industry Board of the Electrical Industry,<br><br>                                                              Plaintiff,<br><br>-against-<br><br><br>FIREALARM ELECTRICAL CORP.,<br><br>                                                              Defendant. | 18 CV _____<br><br><br><br><br>**COMPLAINT** |

Plaintiff, by and through his attorney, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3), 1145, and section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185 to collect delinquent employer contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because Defendant (as defined below) resides or may be found in this district.

## THE PARTIES

4. The Plaintiff is the Chairman of the Joint Industry Board, the administrator of various employee benefit multi-employer plans established and maintained pursuant to a collective

bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO, (the "Union"), and certain employer associations and independent or unaffiliated employers in the electrical and other related industries. The Joint Industry Board maintains its principal place of business at 158-11 Harry Van Arsdale Jr. Avenue, Flushing, New York 11365.

5. The Joint Industry Board ("JIB") is the administrator and fiduciary within the meaning of §§ 3(16)(A)(i) and 3(21)(A) of ERISA, 29 U.S.C. §§ 1002(16)(A)(i) and 1002(21)(A), of each of the following employee benefit plans: (1) the Pension, Hospitalization and Benefit Plan of the Electrical Industry; (2) the Dental Benefit Fund of the Electrical Industry; (3) the Educational and Cultural Trust Fund of the Electrical Industry (the "E&C Fund"); (4) the Annuity Plan of the Electrical Industry; (5) the Health Reimbursement Account Plan of the Electrical Industry; (6) the Deferred Salary Plan of the Electrical Industry (the "DSP"); (7) the Joint Apprenticeship and Training Program (the "JATP"); and (8) the National Electrical Benefit Plan ("NEBF")(collectively the "ERISA Plans" or the "Funds").

6. Per the operative collective bargaining agreement, (the "CBA"), the JIB receives directly from each signatory employer a weekly remittance consisting of contributions to each of the ERISA Plans, except the DSP, as well as a Union assessment collected by the signatory employer from each Union member employed (the "Union Assessment"), which is equal to an employee's weekly hours worked multiplied by the benefits rate articulated in the CBA. The JIB acts as a mere collection agent with respect to the Union Assessment and NEBF contribution.

7. Each of the ERISA Plans is an employee benefit multiemployer plan within the meaning of §3(3) of ERISA, 29 U.S.C. 1002(3), and a multi-employer plan within the meaning of 3(37) of ERISA, 29 U.S.C. § 1002(37). Each of the ERISA Plans is also jointly administered by a

board of trustees that is comprised of labor and management representatives who share equal representation in the administration of the Plans in accordance with 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

8. The DSP is also a tax-qualified profit-sharing plan with a cash or deferred arrangement within the meaning of 401(k) of the Internal Revenue Code (the "Code"). Pursuant to the CBA, employers are required to deduct a specified percentage from the weekly wages of each eligible employee covered by the operative collective bargaining agreement and to remit such amounts, plus any additional salary deferrals made at the election of the employee (together, "Employee Contributions") to the DSP, along with related payroll reports. The Employee Contributions are employee-elective contributions, which, but for the salary deferrals, would have been paid to the employees as wages. Employers are also required to remit employer contributions to the DSP on behalf of all covered employees ("Employer Contributions"), in addition to the Employee Contributions and without regard to any election by the employees.

9. Pursuant to the CBA, the JIB may also collect employee loan payments due to the Union and certain Plans, and contributions to fund the operations of the JIB (collectively, the "Non-ERISA Plans"). Together, the loan payments and the amounts owed to the Non-ERISA Plans are referred to as the "Non-ERISA Contributions."

10. Employee loan repayments may also be deducted from employees' paychecks. The E&C Fund is authorized to make loans to employees, for the purpose of paying for college tuition of a child of an employee, and the employees repay the amount of the loan by authorizing deductions from their paychecks.

11. The Employee Contributions and the Employer Contributions to the DSP are hereafter collectively referred to as "DSP Contributions." Employers are required to send all DSP

Contributions and related payroll data to the DSP in care of Prudential Financial, Inc. ("Prudential"), the third-party record-keeper and investment manager retained by the JIB for such purposes. All DSP Contributions are allocated to individual accounts in the name of the covered employees, who are entitled to direct the investment of their DSP Contributions from among various investment alternatives selected by the JIB in conjunction with Prudential.

12. The signatory employer contributions to each of the ERISA Plans, except the DSP, the Union Assessment remittances, and the Non-ERISA Plan Contributions are collectively referred to as the "JIB Contributions." The JIB Contributions together with the DSP Contributions are hereafter collectively referred to as the "Required Contributions."

13. Defendant FireAlarm Electrical Corp. ("FireAlarm") is a corporation incorporated under the laws of the State of New York. At all relevant times, FireAlarm was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142.

14. FireAlarm maintains its principal place of business at 68 Jay Street, Suite 307, Brooklyn, New York 11201.

## STATEMENT OF FACTS

15. Defendant are parties to a collective bargaining agreement ("CBA") with Local Union No. 3 of the International Brotherhood of Electrical Workers (the "Union").

16. The CBA required Defendant, *inter alia*, to make specified hourly contributions to the Funds in connection with all work performed in the trade and geographical jurisdiction of the Union ("Covered Work").

17. The CBA also required Defendant, *inter alia*, to submit reports on a monthly basis to the Funds detailing the amount of Covered Work performed.

**First Breach of the CBA**

18. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes this Court to enforce the CBA. In addition, section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

19. Pursuant to the CBA between Defendant and the Union, an employer that fails to make prompt and timely payment of fringe benefit contributions shall be subject to an interest charge; liquidated damages in the amount of twenty percent (20%) of the amount of delinquent contributions owing; plus reasonable attorneys' fees, audit fees, and other costs incurred during the audit and collections procedures.

20. Defendant contravened the CBA and Section 515 of ERISA by failing to pay Required Contributions to the Funds for the periods with week ending dates January 24, 2018 and January 31, 2018, resulting in an indebtedness to the Funds equal to $78,004.43.

21. On March 7, 2018, however, the Funds entered into a settlement agreement with FireAlarm ("2018 Settlement").

22. In the 2018 Settlement FireAlarm admitted that it failed to remit requisite contributions to the Funds for payroll weeks ending January 24, 2018 and January 31,2018 and agreed to pay the amount due by making weekly payments of $2,500.00 to the Funds, plus any interest and legal fees to which the Funds were entitled in the enforcement of the 2018 Settlement.

23. FireAlarm also explicitly acknowledged its ongoing responsibility to remit the Required Contributions to the Funds on behalf of its employees in the 2018 Settlement.

24. The 2018 Settlement also provides the Funds with the right to enforce the 2018 Settlement either with a Confession of Judgment or with any remedy available in law or equity or under the CBA or an applicable trust agreement.

**Second Breach of the CBA**

25. Despite its acknowledgment of its obligation to remit the Required Contributions in the March 7, 2018 settlement agreement, FireAlarm shirked its responsibilities to remit Required Contributions to the Funds only one (1) month later.

26. FireAlarm did not remit any contributions to the Funds on April 18, 2018, as was required under the CBA.

27. FireAlarm has continued its dereliction of duty to contribute to the Funds through at least December 12, 2018. FireAlarm did not remit any Required Contributions to the Funds from April 18, 2018 through at least December 12, 2018.

28. As a result of FireAlarm's second breach of the CBA, the Funds are owed $732,889.53 in Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

**Breach of the 2018 Settlement**

29. On May 21, 2018, the Funds sent FireAlarm a letter indicating that FireAlarm was severely delinquent in its required payments to the Funds pursuant to the 2018 Settlement.

30. On May 31, 2018, the Funds sent FireAlarm a Notice of Default, as FireAlarm had not submitted the weekly payment of $2,500.00, as prescribed in the 2018 Settlement, to the Funds in nine (9) weeks.

31. FireAlarm was provided with the opportunity to cure its deficiency. It did not do so and has not done so at present.

32. Accordingly, FireAlarm defaulted on the 2018 Settlement by failing to remit the weekly settlement installments of $2,500. By the terms of the 2018 Settlement, all amounts due under the 2018 Settlement were accelerated, which, as of filing, equaled $45,504.43, and became due and owing immediately, plus interest, liquidated damages, and legal fees and costs.

**FIRST CLAIM FOR RELIEF**
**(Breach of the CBA by Defendant)**

33. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

34. At all relevant times, the Defendant was a party to a CBA with the Union.

35. The CBA required the Defendant to make specified hourly contributions to the Funds in connection with all Covered Work.

36. The CBA required Defendant to submit reports periodically the Funds detailing the amount of Covered Work performed.

37. The Defendant violated the terms of the CBA by failing to make required contributions for the periods of January 24, 2018 through January 31, 2018 and of April 18, 2018 through the present to the Funds in the amount of at least $732,889.53 in Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

38. Accordingly, Defendant is liable to the Funds for contributions in the amount of at least $732,889.53 in Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in prosecuting this suit.

## SECOND CLAIM FOR RELIEF
**(Violation of ERISA by Defendant)**

39. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

40. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

41. At all relevant times, Defendant were party to a CBA with the Union.

42. The CBA required Defendant to make specified hourly contributions to the Funds in connection with all Covered Work.

43. Defendant violated section 515 of ERISA by failing to make required contributions to the Funds for the periods of January 24, 2018 through January 31, 2018 and of April 18, 2018 through the present in an amount of at least $732,889.53 in Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

44. Accordingly, pursuant to §§ 502 and 515 of ERISA, 29 U.S.C. § 1132 and 1145, the CBA, and the documents and instruments governing the Funds, Defendant is liable to the Funds for contributions in the amount of at least $732,889.53 in Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, and attorneys' fees and costs incurred by the Funds in collecting these amounts.

## THIRD CLAIM FOR RELIEF
**(Breach of the Settlement Agreement)**

45. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

46. The Defendant is a party to and are bound by the 2018 Settlement agreement.

47. The 2018 Settlement agreement required Defendant to pay its deficient contributions in 32 weekly installment payments of $2,500.00 beginning on March 7, 2018.

48. Defendant breached the 2018 Settlement agreement in May 2018 by failing to make the weekly installment payments.

49. Plaintiff notified Defendant of its default and Defendant did not make any effort to cure its default.

50. Thus, Defendant failed to timely cure its breach of the 2018 Settlement agreement although payment was duly demanded.

51. Accordingly, Defendant, because of its breach, is liable to the Funds for the balance owed on the September 2018 Settlement Agreement, plus interest, liquidated damages, and legal fees and costs, as prescribed in the 2018 Settlement.

**WHEREFORE,** Plaintiffs respectfully request that this Court:

(1) Award judgment to Plaintiff against Defendant for Defendant's violations under ERISA in the amount equal to Defendant's deficient Required Contributions to Plaintiffs, which, as of December 2018 equaled at least $732,889.53 for the period of April 2018 through present and $45,504.43 for the period of January 24, 2018 through January 31, 2018, totaling $778,393.96 in deficient Required Contributions, plus interest, liquidated damages equal to twenty percent (20%) of the principal owed, attorneys' fees and costs incurred by Plaintiffs in collecting these amounts and prosecuting this case, pre-judgment interest, and post-judgment interest;

(2) Award judgment to Plaintiff against Defendant for Defendant's breach of contract in the amount equal to the balance of the indebtedness that Defendant owes the Funds, which, as of filing, equals $45,504.43, plus interest, liquidated damages, and legal fees and costs, as prescribed in the 2018 Settlement, pre-judgment interest, and post-judgment; and

(3) Award Plaintiff such other and further relief as is just and proper.

Dated: New York, New York
December 18, 2018

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: ____/s/ John M. Harras_____
Charles R. Virginia
Nicole Marion
John M. Harras
40 Broad Street, 7th Floor
New York, NY 10004
(212) 943-9080
*Attorneys for Plaintiff*